UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT J. ALLEN, *et al.*, | ) | Case No.: 1:08 CV 1780 |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| TERRY COLLINS, *et. al.*, | ) | |
| | ) | |
| Defendants | ) | <u>ORDER</u> |

Plaintiffs Robert J. Allen, *et al.*[1] ("Plaintiffs") filed the above-captioned case against the following Defendants: the Director of the Ohio Department of Rehabilitation and Correction ("ODRC"), Terry Collins; the Chair of the Ohio Adult Parole Authority ("APA"), Cynthia B. Mausser ("Mausser"); and Parole Board members, Jim Bedra, Sandra Crockett Mack, Peter Davis, Robert Maszczynski, Kathleen Kovatch, Ellen Venters, R. F. Rauschenberg, Farley Banks (collectively, "Defendants"). Plaintiffs challenge, in large part, the constitutionality of the 2007 Ohio Parole Board Guidelines ("2007 Guidelines") on their face and as applied to Plaintiffs. Now pending before the court are the following Motions: (1) Plaintiffs' Motion for Approval of Expert James Austin, Ph.D., and for Reimbursement of Expenses (ECF No. 36); (2) Plaintiffs' Motion for

---

[1] The Plaintiffs in this case are as follows: Robert J. Allen, Carl Nelson, Donald Nickerson, Thomas Nagy, William Campbell, Dana Morrison, Owen Kilbane, Victor Hartness, Frank Sprenz, Martin Timperio, Danny Maybry, John McDermott, Jack Beatty, Dwayne Brooks, Lamont Clark, Willie Hill, Nick Perryman, Ralph Garduno, Fred Scott, Elizabeth Golebiewski, Patricia Murray, Deborah Clark, and Marilyn Scott.

Proposed Plan for Limited Discovery (ECF No. 45); (3) Plaintiffs' Motion for Class Certification (ECF No. 52); (4) Defendants' First Motion for Summary Judgment (ECF No. 54); and (5) Plaintiffs' Motion for Order Reopening Discovery (ECF No. 61).

On April 1, 2010, Defendants filed a Notice (ECF No. 77) before the court, which indicated that the 2007 Guidelines had been rescinded effective that same date. (*See* Mausser Aff. at ¶ 4, ECF No. 77-1.) They stated therein that because it was rescinded, Plaintiffs' claim asserted in their First Amended Complaint ("Am. Compl.," ECF No. 34-1) is now moot. Plaintiffs rejected this argument and maintained that the case falls under the mootness exception of capable of repetition yet evading review, and that collateral consequences prevent this case from being moot.

For the reasons stated below, the court concludes that Plaintiffs' claim, to the extent that it challenges the constitutionality of the 2007 Guidelines, is now moot. To the extent that the claim challenges other policies by Defendants, the court finds that such a claim fails as a matter of law. Accordingly, the court grants in part Defendants' Motion for Summary Judgment, and denies as moot the remaining pending Motions.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiffs are a group of ODRC inmates, known as "old law" inmates, who are serving indeterminate sentences under the criminal sentencing laws that were in effect prior to July 1, 1996, and who have been denied parole. (Am. Compl. ¶ 167.) Most of the named Plaintiffs are serving non-mandatory life sentence. On July 1, 1996, Ohio enacted a new sentencing scheme, Senate Bill No. 2 ("SB2"), which prospectively eliminated parole and, in large part, indeterminate sentences. This statute was not retroactively applied to those who were sentenced prior to its enactment.

Therefore, those inmates who were issued indeterminate sentences prior to July of 1996, such as Plaintiffs, remain subject to the APA and its parole board.

Plaintiffs contend that the APA, since the enactment of SB2, has "frequently changed the substantive standards for determining parole eligibility that it applies to these old law inmates." (Am. Compl. ¶ 25.) They specifically challenge the 2007 Ohio Parole Guidelines, along with the other policies and practices, which Plaintiffs contend have the effect of increasing the penalty for the crimes for which they were convicted. They claim that under the 1998 guidelines, inmates serving indeterminate sentences were advised of the specific range of months they were expected to serve, based on a matrix that the APA followed. (Am. Compl. ¶ 29.) The matrix range allowed the inmates to know when they could expect to be released assuming good behavior. Plaintiffs maintain that the 2007 Guidelines removed any presumption that the matrix range was reasonable and instead served only "to suggest an initial threshold" for incarceration. (Am. Compl. ¶ 32.) The 2007 Guidelines also purportedly removed the presumption that an inmate serving a non-mandatory life sentence would be released, and instead adopted a policy that presumed that the inmate would serve life in prison. (Am. Compl. ¶ 35.) They also contend that certain crimes were treated more harshly under the 2007 Guidelines; for example, all murder convictions were placed in the highest category on the matrix (category 13), which was previously reserved for only aggravated murder sentences. (Am. Compl. ¶¶ 36-41.) Lastly, the First Amended Complaint explains that the APA changed its policies in 2009 regarding victim participation in the parole proceedings. Now victims are permitted to appear at full hearings at which inmates are not permitted to appear. (Am. Compl. ¶ 46.) Plaintiffs maintain that the impact of these changes, along with other "cumulative changes

in parole standards and procedures" have resulted in increased punishment. (Am. Compl. ¶¶ 48, 51.)

Plaintiffs, on July 24, 2008, filed the instant action *pro se* and moved for the appointment of counsel, which this court granted. Thereafter, Plaintiffs, with the assistance of newly-appointed counsel, filed an Amended Complaint, asserting a single count, proposed class action complaint pursuant to 42 U.S.C. § 1983. They contend that Defendants have deprived them of clearly-established rights under the Fourteenth and Eighth Amendments, as well as the Ex Post Facto clause of the Constitution. They seek declaratory judgment that the practices in the case violate the constitutional and statutory rights of class members, a preliminary and permanent injunction against Defendants preventing these practices, as well as reasonable costs, expenses and fees.

After the filing of their Amended Complaint, Plaintiffs filed a Motion seeking approval from the court to commence a discovery plan, which proposed the use of an expert who would conduct a statistical analysis regarding whether Plaintiffs are indeed facing increased punishment as a result of the recent parole guidelines and practices as they allege. Additionally, they seek from the court approval of costs associated with this expert witness. (Pls.' Mot. for Costs and Approval of Expert Witness Expenses, ECF No. 36; Pls.' Mot. to Approve Discovery Plan, ECF No. 45.) Plaintiffs also filed a Motion for Class Certification (ECF No. 52). Defendants, on the other hand, opposed all Motions and filed a Motion for Summary Judgment (ECF No. 54), arguing that the court lacks subject matter jurisdiction over the claims asserted by Plaintiffs and that their 1983 claim predicated on the Eighth and Fourteenth Amendments as well as the Ex Post Facto clause fails as a matter of law. Plaintiffs opposed this Motion and also responded, pursuant to Federal Rule of Civil Procedure 56(f), that they should be permitted to engage in discovery prior to any ruling on this Motion.

During the briefing of these Motions, however, Defendants informed the court that the 2007 Guidelines had been rescinded and that the APA will now rely solely on the Ohio statutory and Ohio Administrative Code provisions in making parole determinations. They maintain that the case is therefore moot. Plaintiffs, however, contend that the case is not moot as there are collateral consequences that keep the issues in this case alive and because the case fits under the mootness exception of capable of repetition yet evading review. They also argue that while the 2007 Guidelines have been rescinded, Defendants have employed additional policies and practices over time that are not contained in the Guidelines and that all of the parole changes over time have the cumulative effect of increasing their risk of punishment.

## II. NOTICE OF RESCISSION OF 2007 GUIDELINES

Defendants maintain that due to the rescission of the 2007 Guidelines, this case is now moot. Plaintiffs, on the other hand, argue that their claim remains because the 2007 Guidelines are capable of repetition yet evading review. They further contend that their Amended Complaint challenges other policies and procedures of the Ohio Parole Board, and that these policies, including the recently issued 2010 Ohio Parole Board Handbook (ECF No. 82-1), continue to violate Plaintiffs' constitutional rights. The court addresses these issues with regard to mootness below.

### A. Mootness Standard

It is well-settled that "Article III of the United States Constitution empowers the judiciary to adjudicate only actual cases or controversies, and not to issue advisory opinions." *In re Clean Earth Kentucky, LLC*, 312 F. App'x 718, 719 (6th Cir. 2008) (citing *Deakins v. Monaghan*, 484 U.S. 193, 199 (1988)). As such, courts are precluded from "giv[ing] opinions upon moot questions or abstract propositions, or . . . declare principles or rules of law which cannot affect the matter in issue

in the case before it." *Id.* (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)). A case becomes moot "when the issues presented are no longer live or parties lack a legally cognizable interest in the outcome." *Resnick v. Honorable John T. Patton*, 258 F. App'x 789, 792 (6th Cir. 2007) (quoting *Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 530 (6th Cir. 2001)).

In a case such as this where the plaintiff seeks declaratory relief, the claim is moot where "the facts alleged, under all circumstances, show that there is a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of declaratory judgment." *Campbell v. PMI Food Equipment Group, Inc.*, 509 F.3d 776, 781 (6th Cir. 2007) (quoting *Coalition for Gov't Procurement v. Fed. Prison Indus.*, 365 F.3d 435, 459 (6th Cir. 2004) and *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974)). Additionally, regarding Plaintiffs' claim for injunctive relief, this claim is moot if there are no longer "any continuing, present adverse effects." *Case v. Jones-Kelly*, No. 2:08-CV-1171, 2010 U.S. Dist. LEXIS 2221, at *9 (S.D. Ohio Jan. 5, 2010) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)).

There are, however, exceptions to the mootness doctrine, one of which provides that a claim is not moot where it is "capable of repetition, yet evading review." *Campbell*, 509 F.3d at 781. This exception applies where "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subject to the same action again." *Id.* (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)). While this exception is widely recognized, it is "quite narrow and available only in 'exceptional cases.'" *Resnick*, 258 F. App'x at 793 (quoting *Thomas Sysco Food Svcs. v. Martin*, 983 F.2d 60, 62 (6th Cir. 1993)).

### B. Application

### 1. Capable of Repetition, Yet Evading Review

Plaintiffs argue that despite the rescission of the 2007 Guidelines, the case is not moot as the exception of capable of repetition yet evading review applies. They contend that this case is both too short in duration to be fully litigated and that the issues are capable of repetition. It is well-settled that "[t]he party asserting that this exception applies bears the burden of establishing both prongs." *Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005) (citing *Deja Vu of Nashville v. Metro Govern. Of Nashville and Davidson County*, 274 F.3d 377, 390-91 (6th Cir. 2001)).

Plaintiffs maintain that this action fits the first prong of the test that the parole regulations are too short in duration to be fully litigated prior to their rescission or change. While there is no established test used to make this determination, courts have found the following short-term conduct to satisfy this prong: an election cycle in election-law cases, *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 598 (6th Cir. 2006); nine-month duration of a pregnancy, *Roe v. Wade*, 410 U.S. 113, 125 (1973); short-term orders of the court, such as a pen register order, *United States v. New York Tel. Co.*, 434 U.S. 159, 165 n.6 (1997); welfare benefits strikes, *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 127 (1974).

In the instant case, Plaintiffs maintain that the APA has frequently changed its guidelines and its policies and practices. The court, in this regard, agrees. The parole handbooks have underwent revisions in 2000, 2005, 2007, and 2010, along with changing policy statements in 2009 and 2010. These frequent changes indeed make it difficult for inmates such as Plaintiffs to challenge any given policy or practice. The court concludes that Plaintiffs have demonstrated the first prong of this mootness exception.

However, the court disagrees that Plaintiffs have demonstrated that the challenged action in this case is capable of repetition. To demonstrate this prong, there must me more than "a mere physical or theoretical possibility" that the same conduct is capable of repetition. *Resnick v. Patton*, 258 F. App'x 789, 794 (6th Cir. 2007) (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)). Rather, "there must be a reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party." *Id.* (quoting *Murphy*, 455 U.S. at 482) (internal quotations omitted). While Plaintiffs explain this prong in their brief in detail, they fail to point to any facts relevant to this case or otherwise argue how the APA's policies contained in the 2007 Guidelines, which have been rescinded, are likely to be applied in the future. Plaintiffs bear the burden of demonstrating that their case complies with this prong, which they have failed to do.

Furthermore, there are indications that the 2007 Guidelines are not likely to recur. In the 2010 Ohio Parole Handbook (ECF No. 82-1), which was issued following the 2007 Guidelines' rescission, the Ohio Parole Board made clear that it will no longer consult the 2007 Guidelines, and will instead "continue to use its discretionary release authority solely by reference to Ohio statute and administrative code provisions." (2010 Ohio Parole Handbook at 4.) The Board explained that the Guidelines Manual, which included the matrix and was initially developed in 1998, is no longer practical because many of the inmates that remain incarcerated are there because of the "uncommon and serious nature of their crimes." (*Id.*) They noted that the 2007 Guidelines were created to apply to "commonly-seen crimes that demonstrate ordinary risk patterns," and that they found that the remaining inmates "do[] not conform with general risk patterns." (*Id.*) Therefore, they maintain that those Guidelines are no longer useful for the remaining old law inmates. (*Id.*) The Board's explanation of their decision to rescind the 2007 Guidelines indicates that it is unlikely that the

policies therein will recur. Accordingly, the court rejects Plaintiffs' contention that the mootness exception of capable of repetition yet evading review applies in the instant case.

## 2. Collateral Consequences

Plaintiffs also contend that the court should also not dismiss this case as moot because collateral consequences of Defendants' conduct keeps the issues in the case alive. In asserting this argument, they state "Plaintiffs need a declaratory judgment about the constitutionality of the 2007 regulations that have been repealed, such as the elevation of scores on the guidelines chart, so that it can assess whether the new regulations are ex post facto laws." (Pls.' Resp. to Defs.' Notice of Rescission at 7, ECF No. 82.)

The collateral consequences doctrine provides that a case is not moot where aspects of the mooted conduct would adversely affect the complaining party in the future. *See, e.g., Sibron v. New York*, 392 U.S. 40, 54-56 (1968). While this doctrine is generally applied in the criminal context as noted in *Roadway Express, Inc. v. Admin. Review Bd.*, 6 F. App'x 297, 302 (6th Cir. 2001), Plaintiffs claim that the instant case is analogous to *Reno v. Bossier Parish School Board*, 528 U.S. 320 (2000). In *Reno*, the Court concluded that the case, involving a challenge to a 1992 redistricting plan, was not moot despite the Bossier Parish School Board's contention that the plan would never be used again for any purpose. *Reno*, 528 at 327-28. The Court found that the 1992 plan "will have [a] probable continuing effect" because it will "serve as the baseline against which appellee's next voting plan will be evaluated . . ." *Id.*

In the instant case, Plaintiffs contend that the 2007 Guidelines will also have a probable continuing effect. They argue that "each successive major revision to the parole regulations makes it harder to attain parole, increasing the measure of punishment for their offenses." (Pls.' Resp. to Notice of Rescission at 7.) They appear to liken the instant case to *Reno* by arguing that the Parole

Board will use the 2007 Guidelines as a baseline to craft a successive revision that makes it more difficult for Plaintiffs to obtain parole.  This argument, however, is based on mere speculation.  Instead, the 2010 Handbook indicates that the Board will no longer consult the 2007 Guidelines in any way and rely instead on the relevant statutes and regulations. The Board expressly states that they found the 2007 Guidelines to no longer be a practical or effective policy for the remaining inmates.  Plaintiffs have failed to offer any information to support a finding that these guidelines would have any probable continuing effect in how Defendants make parole decisions in the future.  Accordingly, the court finds that the doctrine of collateral consequences is not applicable in the instant case.

### 3.  Policies and Procedures Not Contained in the 2007 Guidelines

Plaintiffs contend that they also challenge procedures and policies other than the 2007 Guidelines, which prevent their claim from being moot in its entirety.  The Amended Complaint does refer to other policies and procedures that they seek to challenge, and they specifically challenge the Victim Rights statute, which, in part, allows victims to attend full hearings without the presence of the inmate.  They also allege that the cumulative effect of Parole Board standards and procedures have subjected Plaintiffs to a risk of increased punishment.  Because these allegations do not relate to the 2007 Guidelines, they remain live issues.  The court discusses Plaintiffs' claim in this regard below.

In their Response to Defendants' Notice of Rescission, they also argue that the 2010 Handbook will lead to the prospect of increased incarceration for Plaintiffs.  However, the 2010 Handbook is not the subject of the Amended Complaint, nor could it be as it was adopted upon the rescission of the 2007 Guidelines, after the filing of the Amended Complaint.  Therefore, any argument in this regard is not an issue properly before this court.

\* \* \*

Based on the discussion above, the court concludes that to the extent Plaintiffs' 1983 claim asserts a challenge to the 2007 Guidelines, the claim is moot. Their challenge to other policies and procedures not contained in the 2007 Guidelines, however, remain.

### III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants maintain that they are entitled to summary judgment on Plaintiffs' Section 1983 claim. While Defendants assert various arguments in support of their Motion, the court addresses only those arguments with regard to the remaining portion of Plaintiffs' claim.

#### A.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. ...

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the

consideration of a motion for summary judgment." *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999).

The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim"; or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id*.

If the moving party meets its burden of production, then the non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts. *Id*. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e).

### B. Application

- 12 -

Plaintiffs, in their Amended Complaint, arguably assert three distinct challenges in addition to the 2007 Guidelines. First, they specifically challenge the Parole Board's Victim Rights statute, which, in part, allows victims a chance to appear at full hearings, in which inmates are precluded. Second, the Complaint makes reference to "other policies and procedures" that they contend create a substantial risk of increased punishment for them. (Am. Compl. at ¶¶ 42-47.) Lastly, they contend that the "cumulative changes in parole standards and procedures" have likewise increased their risk of a longer sentence. (Am. Compl. at ¶ 48.) The court discusses each argument in turn below.

### 1.  Victim Rights Statute

The portion of the Victim Rights statute that Plaintiffs challenge permits victims to be present during full hearings, in which the inmate is not permitted to attend. *See* Ohio Rev. Code § 2967.12(B). While Plaintiffs did not specify the constitutional basis of their challenge, the court construes it as a challenge pursuant to the Ex Post Facto clause.[2] The Supreme Court has expressly held that the "[r]etroactive changes in laws governing parole of prisoners, in some instances, may be violative of [Ex Post Facto]." *Garner v. Jones*, 529 U.S. 244, 250 (2000). To support such a claim, the inmate must demonstrate either: (1) the new rule or guideline presents a significant risk of increased punishment where retroactively applied; or (2) where the rule, on its face, does not demonstrate a significant risk, the rule's practical implementation by the parole board creates a significant risk of increased punishment. *Id.* at 255.

---

[2] In addition to the Ex Post Facto clause, the Amended Complaint also challenges Defendants' conduct under the Eighth and Fourteenth Amendments. However, Plaintiffs have failed to address, in both their Amended Complaint and the briefing before the court, which constitutional bases they are relying on in this regard. Instead, in their response to Defendants' Notice of Rescission of the 2007 Guidelines, they characterize their claim as only one under the Ex Post Facto Clause of the Constitution. (Pls.' Response to Notice at 1.) The court, therefore treats it as such.

- 13 -

This provision, however, has been found not to violate the Ex Post Facto clause by other Ohio courts. In *Clumm v. Warden*, No. 2:08-cv-365, 2008 U.S. Dist. LEXIS 70877 (S.D. Ohio Sept. 18, 2008), the petitioner, who was seeking habeas relief, asserted an analogous Ex Post Facto challenge with regard to this provision. The court concluded that the provision allowing a victim's presence is merely a procedural rule and does not increase a prisoner's punishment. *Id.* at *7. Similarly, the court in *Ridenour v. Collins*, No. 2:08-cv-682, 2010 U.S. Dist. LEXIS 11726, at *26-*27 (S.D. Ohio Feb 10, 2010), recently rejected an identical claim.  There, the plaintiff-inmate argued that these statutes are not merely procedural because a representative of the victim can stop the release of someone who has been granted parole.  *Id.* at *27.  The court rejected this argument and found that the statutes provide the parole board discretion with regard to whether they approve or disapprove of a victim's recommendation.  *Id.*  The court then agreed with *Clumm*, concluding that "the Ohio's victims' rights statutes are merely procedural and do not increase a prisoner's punishment" and therefore, no Ex Post Facto claim lies.  *Id.*  (internal quotations omitted).  *See also, Greene v. Ohio Adult Parole Authority*, No. 08AP-555, 2008 Ohio 5972, at *P19 (Ohio Ct. App. Nov. 18, 2008) ("While many of these [victim rights] provisions became effective after appellant's conviction, they had no substantive impact on appellant's sentence or his eligibility for parole.")

Plaintiffs failed to address this claim in their opposition to the summary judgment motion. They did, however, file a Motion pursuant to Federal Rule of Civil Procedure 56(f), arguing that the court should refrain from granting summary judgment in Defendants' favor until after discovery is complete.  They seek the opportunity to secure depositions from Defendants as well as other memoranda, emails and correspondence between APA members, Plaintiffs' parole files, and statistical data on inmates granted parole between 1987 and 2009.  (Pls.' Rule 56(f) Mot. to Complete Discovery, ECF No. 61.)  However, any discovery on this issue would be moot as the

- 14 -

court finds, for the reasons articulated in *Clumm*, *Greene*, and *Ridenour*, that this claim fails as a matter of law. Accordingly, the court grants summary judgment in favor of Defendants to the extent Plaintiffs' 1983 claim sought to challenge the Victims Rights statute.

### 2. "Cumulative Changes in Parole Standards and Procedures"

The Amended Complaint indicates that Plaintiffs are not only challenging certain policies in particular but also the cumulative effect of parole changes over time, which they contend "have increased the length of incarceration before parole for members of the class." (Am Compl. ¶ 48.) Defendants maintain that this claim fails as a matter of law because it is vague, generalized, and not justiciable. While the court agrees that this claim is vague, it is also foreclosed based on the reasoning articulated in *Foster v. Booker*, 595 F.3d 353, 363 (6th Cir. 2010).

In *Foster*, the plaintiff-inmates brought an ex post facto challenge based on the "cumulative effect of statutory changes to the structure and composition of the Board in 1992 and changes to parole procedures in 1992 and 1999." *Id.* at 357. The Sixth Circuit noted that not every change that results in increased time served before parole gives rise to an ex post facto claim. In particular, the court makes clear that there is no ex post facto violation where a new parole board changes the way it exercises its discretion, even if they chose a "tough-on-crime" approach. *Id.* at 364. Instead, there must be some legal change that affects the parole board in exercising their discretion that results in a significant risk of increased punishment for the inmate. *Id.* at 362-63. The court further explained that where a plaintiff broadly challenges the cumulative effect of several changes to parole policies over an extended period, one could not reasonably determine whether such change was attributable to a permissible change in policy as compared to an impermissible change, which is central to this claim. *Id.* at 365.

In the instant case, Plaintiffs are likewise seeking to prove that the cumulative effect of parole changes over time have resulted in increased punishment for them. In their Rule 56(f) Motion, they request statistical data with regard to parole decisions between 1987 and 2009 to demonstrate that the effect of parole board changes over this twelve-year period have resulted in the significant risk of increased punishment to them now. However, as the court indicated in *Foster*, statistics demonstrating that it is more difficult to obtain parole now than it was in 1987 would not demonstrate whether such a change was attributable to any improper policy in particular. Additionally, there have been several parole board changes between 1987 and 2009 that have been subject to lawsuits by inmates and that were resolved in their favor. *See, e.g., Layne v. Ohio Adult Parole Authority*, 780 N.E.2d 548 (Ohio 2002); *Ankrom v. Hageman*, No. 06AP-735, 2007 Ohio App. LEXIS 4496 (Ohio Ct. App. 2005). Accordingly, the court finds that to the extent Plaintiffs seek to challenge the cumulative effect of the parole changes from 1987, their claim fails as a matter of law.

### 3. Other Board Policies and Procedures

Lastly, the Amended Complaint appears to indicate that Plaintiffs seek to challenge other policies and procedures of the APA and the parole board that the court has yet to discuss. (Am. Compl. ¶ 1 .) Plaintiffs, however, have failed to point to any additional provisions that they seek to challenge. Therefore, to the extent that Plaintiffs challenge any "other polices and procedures," the court grants summary judgment in Defendants' favor with regard to this claim.

## IV. REMAINING PENDING MOTIONS

There are several other Motions pending before the court: Plaintiffs' Motion for Approval of Expert James Austin, Ph D, and for Reimbursement of Expenses (ECF No. 36), Plaintiffs' Motion for Proposed Plan for Limited Discovery (ECF No. 45), Plaintiffs' Motion for Class Certification

(ECF No. 52), and Plaintiffs' Motion for Order Reopening Discovery (ECF No. 61). Because the court concludes that Plaintiffs claims are moot with regard to the 2007 Guidelines and otherwise fail as a matter of law, these Motions are now moot.

## V. CONCLUSION

For the foregoing reasons, the court concludes that Plaintiffs' claim is moot with regard to their challenge to the 2007 Ohio Parole Board Guidelines Manual as it has recently been rescinded. To the extent that Plaintiffs sought to challenge other Ohio Parole Board practices and procedures, the court finds that such challenges fail as a matter of law. Accordingly, the court grants in part Defendants' Motion for Summary Judgment (ECF No. 54), and denies as moot Plaintiffs' Motion for Approval of Expert James Austin, Ph D, and for Reimbursement of Expenses (ECF No. 36), Plaintiffs' Motion for Proposed Plan for Limited Discovery (ECF No. 45), Plaintiffs' Motion for Class Certification (ECF No. 52), and Plaintiffs' Motion for Order Reopening Discovery (ECF No. 61).

As there are no further issues remaining before the court, this action is hereby dismissed.

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
CHIEF JUDGE
UNITED STATES DISTRICT COURT

August 4, 2010